IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMINIC CERASO, | : | |
|     Plaintiff | : | No. 2:17-cv-00003 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| FEDEX CORPORATE SERVICES, INC., | : | |
|     Defendant | : | |

## MEMORANDUM

This case arises from Defendant FedEx Corporate Services, Inc. ("FedEx")'s revocation of a contingent offer of employment to Plaintiff Dominic Ceraso ("Plaintiff"), which Plaintiff maintains amounts to wrongful discharge in violation of Pennsylvania's Criminal History Records Information Act ("CHRIA"), 18 Pa. C.S.A. § 9125, and Article I of the Pennsylvania Constitution.[1]  Before the Court is FedEx's motion for summary judgment.  (Doc. No. 37.)  For the reasons that follow, the Court will grant the motion.

I.   BACKGROUND[2]

Plaintiff possesses three misdemeanor convictions on his criminal record.  (Doc. No. 39 ¶ 1.)  Plaintiff's first conviction, for intentionally impersonating another in a voter registration application, occurred in 2009.  (Id. ¶ 2.)  In February 2012, Plaintiff was also convicted of passing a bad check, and in March 2012, of theft by unlawful taking.  (Id. ¶¶ 3-4.)

In March 2016, four years after his last conviction, Plaintiff applied for work through NexTech Solutions LLC ("NexTech"), a firm providing staffing support to various entities,

---

[1] The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1332 and 1441.

[2] The following relevant facts of record are taken from FedEx's Concise Statement of Material Facts ("CSMF") (Doc. No. 39), and Plaintiff's Response to Defendant's Concise Statement of Material Facts ("Response") (Doc. No. 45), and are undisputed unless otherwise noted.  Both the CSMF and the Response contain specific citations to the record at each numbered paragraph.

including FedEx. (Id. ¶¶ 5-6.) When Plaintiff applied at NexTech, FedEx had an available position as Programmer/Application Developer in a group headed by Brian Snyder ("Snyder"), a manager of information technology ("IT"), at FedEx. (Id. ¶ 7.) Snyder completed paperwork regarding the position, generated a work approval, and was provided candidates for review, one of whom was Plaintiff. (Id.) Plaintiff's placement through NexTech began with a phone conversation during which Plaintiff described his professional abilities and background. (Id. ¶ 8.) That initial phone call was followed by a technical screening performed by someone hired by NexTech. (Id. ¶ 9.)

After receiving a signed non-disclosure agreement from Plaintiff, NexTech sent an email to Plaintiff regarding the Programmer/Application Developer position at FedEx, requesting confirmation of his rate of pay and willingness to be considered for the FedEx position. (Id. ¶ 10.) Plaintiff responded to the email and agreed to consideration for the position. (Id. ¶ 11.) Accordingly, NexTech submitted Plaintiff's resume to FedEx, who ultimately selected him for the position. (Id. ¶ 12.) Subsequently, Plaintiff received documents from his contact at NexTech, Justin Moulder, including a request that Plaintiff complete a drug screening and consent to perform a background check. (Id. ¶ 13.)

The contract between FedEx and vendors such as NexTech determines whether an investigation or review of a criminal background is required for vendor employees. (Id. ¶ 14.) FedEx's contract with NexTech requires NexTech to conduct a criminal background check and drug testing on all individuals providing services to FedEx on its behalf. (Id. ¶ 15.) FedEx's contract with NexTech also provides that NexTech report the following background check results to FedEx: (i) no records; (ii) convictions/guilty pleas; (iii) drug charges; (iv) domestic assault and domestic violence; (v) theft; (vi) pending criminal charges awaiting disposition;

and (vii) active warrants. (Id. ¶ 16.) Further, the contract requires NexTech to reject any candidate whose criminal history record includes any of the following within the past ten (10) years: (i) a drug charge to which the candidate pled guilty, pled no contest, or was convicted; (ii) domestic assault or domestic violence charges of which the candidate was convicted, pled guilty, or pled no contest; and (iii) theft charges of which the candidate was convicted, pled guilty, or pled no contest. (Id. ¶ 17.)

Accordingly, on June 1, 2016, Blue Line Investigations conducted a background check of Plaintiff for NexTech. (Id. ¶ 18.) That background check report revealed three adverse findings: (i) a conviction for bad checks; (ii) a violation of probation notation; and (iii) a conviction for intentionally impersonating another. (Id. ¶ 19.)[3] NexTech received the background check report from Blue Line Investigations on June 3, 2016, and, through its President, immediately forwarded a copy by email to Brian Snyder at FedEx. (Doc. No. 39 ¶ 20.) The email from NexTech's President contained an explanation from Plaintiff as to each conviction, and attached to the email was a copy of the background check report. (Id.)[4] Snyder did not open the attached

---

[3] Plaintiff's Response purports to dispute this fact. Local Rule 56C of this Court requires, in each numbered paragraph, a responsive concise statement of facts to set forth "the basis for the denial of any fact contained in the moving party's Concise Statement of Material Facts [that] is not admitted in its entirety . . . with appropriate reference to the record." LCvR 56C1.b. By way of specific denial, Plaintiff's Response states that NexTech's President stated in an email that the convictions "should not be a problem on your end (with security), as they are not of a 'theft nature.'" However, that fact does not call into question the substance of the background report. Accordingly, Plaintiff's Response fails to properly dispute this fact, and it will be deemed admitted for purposes of this summary judgment motion. See LCvR 56E (stating that "[a]lleged material facts set forth in the moving party's Concise Statement of Material Facts . . . will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied").

[4] Again, Plaintiff's Response purports to dispute the preceding two statements, but by way of specific denial offers only a reference to the emailed statement of NexTech's President that the convictions "should not be a problem on your end (with security), as they are not of a 'theft nature,'" which, as stated above, does not call into question the substance of the relevant facts

3

background check report because to his knowledge, NexTech would not send a candidate to FedEx that did not meet the parameters, specifications, and qualifications provided to them. (Doc. No. 39 ¶ 21.) Plaintiff possessed a theft conviction at the time Blue Line Investigations conducted the background check, but that conviction did not appear on the report. (Id. ¶ 22.) FedEx maintains that Plaintiff did not tell anyone at FedEx that he had a prior theft conviction. (Id. ¶ 23.) Plaintiff disputes this statement, maintaining that he notified NexTech of the theft conviction during the application process, and that it was the responsibility of NexTech to relay the relevant investigatory information to FedEx. (Doc. No. 45 ¶ 23.)

On June 6, 2016, Plaintiff began working for NexTech at FedEx. (Doc. No. 39 ¶ 24.) Snyder directly supervised Plaintiff when he worked for NexTech as a Programmer/Application Developer at FedEx. (Id. ¶ 25.) Despite completing a few tasks late, overall, Plaintiff performed acceptably as a Programmer/Application Developer while working as a contractor vendor for NexTech at FedEx. (Id. ¶ 26.) On his first or second day of work at FedEx, Plaintiff approached Snyder and expressed interest in opportunities for full-time employment at FedEx. (Id. ¶ 27.) After that conversation, Snyder provided Plaintiff with notification of a number of career opportunities, something he does for all members of his team. (Id. ¶¶ 28-29.) In or around July or August of 2016, Plaintiff applied for one of the positions listed in the career opportunities provided by Snyder; specifically, Plaintiff applied for a position as a full-time Senior Programmer Analyst reporting to FedEx IT Manager Jim Cummins. (Id. ¶ 30.) Ultimately, Plaintiff was offered the position of Senior Programmer Analyst in the group headed by Jim Cummins, subject to his successful completion of FedEx's pre-employment process, including a background check. (Id. ¶ 31.) Cummins, who was the hiring manager for the Senior

---

proffered by FedEx. Accordingly, the facts set forth in paragraph 20 will be deemed admitted, pursuant to Local Rule 56E.

4

Programmer Analyst position, was not involved in the process of conducting or reviewing Plaintiff's background check, instead receiving information on the status of Plaintiff's pre-employment process from a FedEx Human Resources employee. (Id. ¶ 32.) Plaintiff disputes this statement in part, clarifying that while Cummons received information that the pre-employment background investigation was underway, he testified that he was not made aware of the results of the investigation. (Doc. No. 45 ¶ 32.)

Plaintiff never began employment with FedEx, as sometime between September 30, 2016 and November 1, 2016, Adam Austin, a FedEx Human Resources employee, received Plaintiff's criminal background check report, and because of an adverse finding in the report, referred it to the FedEx legal department for review. (Doc. No. 39 ¶ 34.) When there are any adverse findings within a criminal background report, FedEx procedure mandates that the report be referred to its legal department for review and approval. (Id. ¶ 35.) This review process begins with a review of the report by one of the legal department paralegals. (Id. ¶ 36.) If that paralegal is unsure as to the job-relatedness of a particular adverse finding in a background report, he or she refers the report to an attorney in the department for additional review. (Id. ¶ 37.) Typically, in such a situation, the legal department asks the subject of the report for additional information to aid in making a decision as to whether the prior conviction(s) noted in the report are job-related. (Id. ¶ 38.) In such a circumstance, an attorney in the legal department, never a paralegal, makes the final decision as to whether a prior conviction is job-related. (Id. ¶ 39.) In making that determination, the attorney examines the position for which the candidate is under consideration in comparison to the circumstances of the adverse finding in the criminal background report in order to determine if the two are related, and if there is a risk that the conduct reflected in the background report may re-occur, in an ultimate effort to decide if such

conduct renders the candidate unsuitable for the position. (Id. ¶ 40.) Plaintiff purports to dispute this fact in his Response, arguing that an effort to determine if conduct reflected in the background report may re-occur is "not the legal definition of suitable nor is it defined in the relevant statute as such." (Doc. No. 45 ¶ 40.)

In connection with its review of the background report, the legal department performs an individualized inquiry regarding every conviction. (Doc. No. 39 ¶ 41.) This procedure was followed in Plaintiff's case, with initial review of his background report by Becky Long, a paralegal in FedEx's legal department. (Id. ¶¶ 42-43.) Long then referred the report to David DeRosa, an attorney in FedEx's legal department, for further review. (Id. ¶ 44.) DeRosa in turn referred the report to Lynn Diebold, the head of the group within FedEx's legal department responsible for reviewing and approving criminal background check reports. (Id. ¶ 45.)

Diebold reviewed each of the adverse findings and instructed her staff to request additional follow-up information from Plaintiff, in accordance with her responsibility to perform an individualized inquiry regarding every conviction. (Id. ¶ 46.) Plaintiff subsequently submitted explanations for each of the convictions appearing in the background check report for Diebold's review. (Id. ¶ 47.) In connection with her review, Diebold considered a number of other factors, including Plaintiff's current age, the age at which the convictions occurred, the recency of the convictions, and whether Plaintiff had completed probation for all convictions appearing in the record. (Id. ¶ 48.)[5] After reviewing all of the information before her, including the background check report and Plaintiff's email explaining each conviction, and taking into

---

[5] While Plaintiff purports to dispute this fact as "irrelevant," relevancy is not a basis for specifically denying the truth of a statement offered in support of a motion for summary judgment. Plaintiff's Response to this statement provides that "the convictions on their own do not affect Plaintiff's suitability to carry out the functions of the position. It is irrelevant whether other factors were considered in this process." (Doc. No. 45 ¶ 48.)

6

consideration the other factors articulated above, Diebold determined that Plaintiff was not suitable for employment in the Senior Programmer Analyst position and rescinded his offer of employment. (Id. ¶ 49.)[6]

Ultimately, it was a combination of all three convictions that resulted in Diebold's decision to rescind Plaintiff's job offer. (Doc. No. 39 ¶ 50.) Specifically, the bad check and voter impersonation convictions raised concerns regarding Plaintiff's honesty. (Id. ¶ 51.) FedEx maintains that by working in an IT position, Plaintiff would have had access to confidential and proprietary information, some of which was "secretly developed for FedEx for its sole use," which gave rise to Diebold's concern about Plaintiff's suitability for the position in light of his convictions reflecting a lack of honesty. (Id.) Plaintiff disputes this fact, maintaining that FedEx does not mention "extremely confidential information" or "proprietary information, secretly developed" in its official job description for Senior Programmer Analyst. (Doc. No. 45 ¶ 51.) FedEx maintains that Diebold was also concerned about Plaintiff's theft conviction, which Plaintiff indicated in his written explanation pertained to the theft of a laptop computer, raising a question in Diebold's mind as to Plaintiff's suitability for employment in an IT position that entails working in an environment surrounded by computer equipment. (Doc. No. 39 ¶ 52.) Plaintiff disputes this fact as well, stating that he explained the details of his theft conviction, and maintaining that the circumstances of the theft of the laptop do not constitute "actively steal[ing] a computer or computer equipment." (Doc. No. 45 ¶ 52.)[7]

---

[6] Plaintiff again purports to dispute this fact on the basis of relevancy, stating that "[b]y way of further response, the convictions on their own do not affect Plaintiff's suitability to carry out the functions of the position. It is irrelevant whether other factors were considered in this process." (Doc. No. 45 ¶ 49.)

[7] Plaintiff refers to his deposition testimony, where he describes the incident as one where he transferred data from an old laptop onto a new laptop for a friend's father and never returned the old laptop to him, instead disposing of it. (Doc. No. 44 at 14:16-16:17.)

FedEx has a policy providing that all convictions for theft are job-related, as it views theft convictions as indicative of a candidate's honesty. (Id. ¶ 53.) Despite this fact, all convictions are considered on a case-by-case basis, meaning that theft convictions do not always result in revocation of a conditional job offer. (Id.) Specifically, FedEx examines all of the circumstances surrounding the conviction and considers the individual's proffered explanation. (Id.) In connection with her review of Plaintiff's background report, Diebold did not consider Plaintiff's performance as an on-site vendor, or whether he possessed the skills and abilities to perform the position for which he was under consideration, because she was focused only on whether he was suitable for the position. (Id. ¶ 54.)

On or about October 31, 2016, Becky Long, the paralegal who initially reviewed Plaintiff's background report, sent an email at Diebold's instruction to Adam Austin in FedEx's Human Resources department, informing him that Plaintiff was not eligible for hire by FedEx. (Id. ¶ 55.) That same day, Austin informed Plaintiff via email that due to his criminal background report, FedEx was rescinding its offer of employment to him. (Id. ¶ 56.) Plaintiff subsequently submitted applications to other employers, one of which, an entity called Build in Motion, offered Plaintiff a position with a compensation package comparable to that which he would have received at FedEx. (Id. ¶¶ 57-58.) Plaintiff accepted the position; however, a few days later, the owner of Build in Motion contacted him to inform him that based on his background, he would not be hired. (Id. ¶¶ 59-60.)

On January 3, 2017, FedEx filed a notice of removal of the complaint filed by Plaintiff against FedEx alleging wrongful discharge in violation of the Pennsylvania Criminal History Records Information Act ("CHRIA"), 18 Pa. C.S.A. § 9125, and Article I of the Pennsylvania Constitution, originally filed in the Court of Common Pleas of Allegheny County. (Doc. No. 1.)

Upon the conclusion of discovery, FedEx filed the instant motion for summary judgment (Doc. No. 37), with a Concise Statement of Material Facts (Doc. No. 39), and supporting brief (Doc. No. 38). Plaintiff filed a Response to FedEx's Concise Statement of Material Facts (Doc. No. 45), and a brief in opposition to the motion (Doc. No. 43), on January 29, 2018. FedEx filed its reply brief on February 26, 2018. (Doc. No. 46.) Accordingly, the motion has been fully briefed and is ripe for disposition.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal

9

memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III. DISCUSSION

FedEx maintains that it is entitled to judgment as a matter of law on Plaintiff's wrongful discharge claim because he has no entitlement to relief under either the CHRIA or Article I of the Pennsylvania Constitution. The Court first addresses the applicability of Article I of the Pennsylvania Constitution.

### A. Article I of the Pennsylvania Constitution

As noted above, FedEx maintains that it is entitled to judgment as a matter of law as to any wrongful discharge claim based on an alleged violation of Article I of the Pennsylvania Constitution. Relying on Nixon v. Commonwealth, 789 A.2d 376, 380 (Pa. Commw. Ct. 2001), aff'd on other grounds, 839 A.2d 277 (2003), Plaintiff premises his wrongful discharge claim on Article I's guarantee of an individual's right to work. In support of its argument that any such

claim fails as a matter of law, FedEx points to applicable precedent holding that the provisions of Article I of the Pennsylvania Constitution are intended only to apply to state actors, and therefore, do not apply to private employers like FedEx. See Prewitt v. Walgreens Co., No. 12-6967, 2013 WL 6284166, at *3 (E.D. Pa. Dec. 2, 2013) (citing Commonwealth by Shapp v. Nat'l Gettysburg Battlefield Tower, Inc., 311 A.3d 588, 592 (Pa. 1973) and finding that the provisions in Article I of the Pennsylvania Constitution are only intended to apply to state actors). Moreover, in its reply brief, FedEx points out that Plaintiff failed to address its argument regarding Article I of the Pennsylvania Constitution in his brief in opposition to FedEx's motion, entitling FedEx to a finding that Plaintiff has abandoned any such claim. See Reeves v. Travelers Cos., 296 F. Supp. 3d 687, 692 (E.D. Pa. 2017) (finding that if a party opposing a summary judgment motion responds to the motion "but fails to address the substance of any challenge to particular claims, that failure 'constitutes an abandonment of those causes of action and essentially acts as a waiver of these issues'") (quoting Campbell v. Jefferson Univ. Physicians, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014)).

Based on the above authorities, the Court is persuaded that Plaintiff's wrongful discharge claim premised on an alleged violation of Article I of the Pennsylvania Constitution fails as a matter of law. Even if Plaintiff had not abandoned the claim, the Court finds that FedEx is entitled to judgment as a matter of law on the basis that Article I of the Pennsylvania Constitution applies only to state actors, not private employers like FedEx. See Prewitt, 2013 WL 6284166, at *3 (finding that "courts in the Third Circuit hearing wrongful discharge diversity cases have adopted Pennsylvania's reasoning that violations of Article I provisions by private employers do not warrant a finding of wrongful discharge"). The Court next addresses

FedEx's argument that Plaintiff's wrongful discharge claim premised on a violation of Pennsylvania's CHRIA similarly fails as a matter of law.

### B. Pennsylvania's CHRIA

The CHRIA prohibits employers from relying on a job applicant's criminal history record in an arbitrary way in connection with the hiring process. See 18 Pa. C.S.A. § 9125; Hunter v. Port Auth. of Allegheny Cty., 419 A.2d 631, 634 (Pa. Super. Ct. 1980) (citation omitted) (explaining that prior convictions that do not reflect on an applicant's ability to properly discharge the responsibilities of a position cannot serve as a basis for a denial of employment). In particular, Section 9125, which governs a potential employer's use of an applicant's criminal history record information, provides, in relevant part:

> (a) General rule. – Whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with this section.
>
> (b) Use of Information. – Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.

18 Pa. C.S.A. § 9125. Accordingly, when a potential employer considers misdemeanor and felony convictions in connection with a candidate's employment application, it may do so only to the extent such convictions relate to the applicant's suitability for the particular position for which he is under consideration. See McCorkle v. Schenker Logistics, Inc., No. 1:13-cv-3077, 2014 WL 5020598, at *5 (M.D. Pa. Oct. 8, 2014); Negron v. Sch. Dist. of Phila., 994 F. Supp. 2d 663, 667 (E.D. Pa. 2014); Frankowski v. State Civ. Serv. Comm'n, No. 1706 C.D. 2012, 2013 WL 3198733, at *4 (Pa. Commw. Ct. June 25, 2013). "Suitability" is not defined by the CHRIA, while Black's Law Dictionary defines suitable as "fit and appropriate for their intended purpose." See BLACK'S LAW DICTIONARY 1572 (9th ed. 2009).

In moving for summary judgment, FedEx makes two arguments. First, it argues that the undisputed material facts demonstrate that the convictions on Plaintiff's criminal history report were directly related to his suitability for employment with FedEx as a Senior Programmer Analyst, and therefore, properly considered by FedEx in connection with his employment application and its ultimate decision to revoke his conditional offer of employment. (Doc. No. 38 at 4-7.) FedEx also argues, alternatively, that the undisputed material facts demonstrate that it committed no violation of the CHRIA because its decision as to Plaintiff's employment was based on information obtained from sources other than Plaintiff's criminal history record. (Id. at 10-12.) The Court first addresses FedEx's argument that it is entitled to judgment as a matter of law because no reasonable factfinder could conclude that it considered Plaintiff's convictions in an arbitrary way, as opposed to considering them as they related to his suitability for employment with FedEx as a Senior Programmer Analyst.

FedEx emphasizes that, in connection with an employer's consideration of convictions in an applicant's criminal history report, the relevant inquiry is not one of the applicant's skills or qualifications to perform the job, but rather his or her suitability for employment in the particular position, taking into account the nature of the prior convictions and the potential work environment. Both FedEx and Plaintiff note the scarcity of case law interpreting the CHRIA and the "suitability" requirement. See Specialized Sec. Resp., No. 09-515, 2011 WL 3734238, at *16 (W.D. Pa. Aug. 24, 2011) (granting summary judgment to employer on claim of violation of CHRIA and noting "a paucity of case law interpreting the [CHRIA]"). However, FedEx points to Frankowski v. State Civ. Serv. Comm'n, No. 1706-CD-2012, 2013 WL 3198733 (Pa. Commw. Ct. June 25, 2013), an unreported panel decision in which the Pennsylvania Commonwealth Court found no violation of the CHRIA where the State Civil Service

13

Commission determined that plaintiff's prior conviction for child pornography rendered him unsuitable for employment, because the positions for which he was under consideration would have required him to work in an environment in which "large numbers of children congregate, employees are left unsupervised for extended periods of time, and children may be unattended by adults or may be disrobing in remote locations." See Frankowski, 2013 WL 3198733, at *4. FedEx also refers to a Pennsylvania Court of Common Pleas decision in Reynolds v. Murphy Ford, Inc., No. 2533, 2007 WL 1654384, at *__ (Pa. Ct. Com. Pl. May 3, 2007), where the court found that the entry of summary judgment in favor of the employer was proper on a claim of violation of the CHRIA where a car dealership employer revoked an offer of employment to the plaintiff after considering the plaintiff's prior convictions for theft and burglary in connection with his application for employment as a sales representative. The court found that "[a]s sales representatives occasionally have access to customers' confidential financial information and deposit monies, their criminal background clearly has a major role in their suitability for employment," despite the fact that the applicant had previously worked for the car dealership for a number of years and had an excellent work record. See Reynolds, 2007 WL 1654384 at *__.

Accordingly, based on the above interpretation of the statutory language of the CHRIA by the aforementioned authorities, FedEx maintains that Plaintiff's prior work relationship with FedEx as a vendor employee, as well as his skills and abilities, were irrelevant considerations in connection with FedEx's effort to determine whether Plaintiff's criminal convictions rendered him "suitable" for employment as a Senior Programmer Analyst at FedEx. FedEx maintains that the undisputed facts demonstrate that Plaintiff possessed a theft conviction, as well as other convictions bearing on his honesty, and that, under the precedent discussed above, it fairly determined, in accordance with the CHRIA, that it was not appropriate to place Plaintiff in a

position involving access to equipment similar to that he was convicted of stealing, and potential exposure to confidential or proprietary information.[8] Plaintiff's opposition to FedEx's argument on this point is focused on pointing to his deposition testimony wherein he explains in detail the circumstances of each of his convictions in an effort to persuade the Court that such circumstances do not bear on his suitability for employment as a Senior Programmer Analyst with FedEx and were in fact "mere misunderstandings." (Doc. No. 43 at 4-7.)

Upon review of the parties' briefs and the evidence of record, and considering all facts in the light most favorable to Plaintiff, the non-moving party, the Court concludes that Plaintiff has failed to point to evidence of record from which a reasonable factfinder could conclude that FedEx considered Plaintiff's convictions in an arbitrary way when revoking his conditional offer of employment, as opposed to considering them as they related to his suitability for employment with FedEx as a Senior Programmer Analyst. FedEx has pointed to evidence of record – specifically, Diebold's testimony – that it was a combination of all three convictions that resulted in Diebold's decision to revoke Plaintiff's conditional job offer because his bad check and voter

---

[8] As noted above, Plaintiff disputes the fact that the Senior Programmer Analyst position involved access to confidential or proprietary information, noting that such language does not appear in the job description for the position. The job description of a Senior Programmer Analyst is as follows:

> Under limited supervision, analyze and develop system requirements, program specifications and code-unit test to meet business requirements/specifications for large projects. Develop or contribute to deliverables for additional levels of testing and support test execution including system level and integration levels. Frequently leads large projects. Resolve production problems of medium to high complexity. Provides guidance to those in less senior positions. All other related duties as assigned.

(Doc. No. 44 at 47.) However, language in a job description is not necessarily determinative of all factors related to a suitability assessment. As FedEx points out, in Frankowski, the plaintiff was under consideration for three positions, none of whose job descriptions indicated that plaintiff would necessarily work in close proximity to children; however, the court found that all aspects of a position, in that case, plaintiff's presence in the state park system where children were likely to be present, were potentially relevant to a suitability analysis. See Frankowski, 2013 WL 3198733, at *4.

15

impersonation convictions raised concerns regarding Plaintiff's honesty. (Doc. No. 39 ¶ 50.) Moreover, Diebold testified to her concern about the circumstances of Plaintiff's theft conviction, which, in his written explanation, Plaintiff informed FedEx pertained to his failure to return a laptop computer, which is the same equipment that Plaintiff would encounter in the position of Senior Programmer Analyst on a daily basis. (Id. ¶ 52.)

Furthermore, FedEx has a company-wide policy providing that all convictions for theft are job-related, as it views theft convictions as indicative of an employee's honesty. (Id. ¶¶ 46, 53.) However, regardless of this policy, the record is clear that FedEx performed an individualized inquiry into each of Plaintiff's convictions, including his theft conviction, seeking an explanation of the specific circumstances of each conviction from Plaintiff in an effort to determine how those convictions impacted his suitability for the Senior Programmer Analyst position. (Id. ¶¶ 46-47.) While Plaintiff obviously disagrees with FedEx's determination that the totality of his convictions rendered him "unsuitable" for employment in the position for which he was under consideration, he has not pointed to facts from which a reasonable factfinder could conclude that FedEx considered Plaintiff's convictions in an arbitrary way, as opposed to analyzing their relationship to his suitability for employment as a Senior Programmer Analyst. Plaintiff's efforts to emphasize his prior working relationship with FedEx as a vendor employee and his obvious skills and abilities are unavailing, as it is clear from the minimal relevant precedent that neither Plaintiff's prior working relationship with FedEx as a vendor employee nor his obvious skills and abilities pertain to the suitability determination permissible under the CHRIA, which is focused on the extent to which an applicant's criminal convictions relate to his

suitability for employment in a particular position. Accordingly, FedEx is entitled to summary judgment on Plaintiff's wrongful discharge claim premised on a violation of the CHRIA.[9]

## IV. CONCLUSION

For all of the reasons discussed above, FedEx's motion for summary judgment (Doc No. 37), will be granted. An Order consistent with this Memorandum follows.

---

[9] In light of the Court's resolution of the suitability issue, the Court need not address FedEx's alternative argument that its decision was based on information obtained from sources other than Plaintiff's criminal history record.